# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **TERESA CHAMBERS,** | * |
| Plaintiff, | * |
| v. | * |
|  | *  Civil Case No.: RWT 11-765 |
| **BONITA CHAMBERS, et al.,** | * |
| Defendants. | * |

## MEMORANDUM OPINION

Plaintiff Teresa Chambers has filed suit against her siblings, Defendants Bonita ("Bonnie") and Dennis Chambers (collectively, "Defendants"). Plaintiff seeks damages and injunctive relief for Defendants' alleged defamatory statements made against her. Pending before the Court is Defendants' *pro se* Motion to Dismiss all Counts of Plaintiff's Original Complaint for Injunctive Relief. ECF No. 7. Defendants assert that this Court does not have subject-matter jurisdiction, it cannot exercise personal jurisdiction over Defendants, and that venue is improper. For the reasons that follow, Defendants' motion will be denied.

## BACKGROUND

Plaintiff is a resident of Maryland and the current Chief of the United States Park Police. Compl. ¶ 6. Bonnie Chambers is a resident of the State of Florida and Dennis Chambers is a resident of Massachusetts. Id. ¶ 2, 3; Def.'s Mot. Dismiss at 1-2.

In 2004, the United States Park Police dismissed Plaintiff from her position as its Chief after she publicly commented on the low staffing levels in her department and its effect on national park safety. *Id.* ¶ 6. After her dismissal, Plaintiff was appointed as Chief of Police in Riverdale Park, Maryland. *Id.* ¶ 18. Plaintiff challenged her dismissal and, after a seven-year

battle with the Department of the Interior, she was reinstated as Chief of the United States Park Police in January, 2011. *Id.*; T. Chambers Decl. ¶ 2, Pl.'s Opp'n Def.'s Mot. Dismiss Ex. A. As a result of these events, Plaintiff garnered the nickname "Honest Chief." *Id.* ¶ 27.

On July 8, 2008, the parties' father, William Chambers, passed away. *Id.* ¶ 10. His estate was opened in the Orphans Court for Allegany County, Maryland, naming Plaintiff as its Personal Representative. *Id.* Thus, Plaintiff was charged with managing the affairs of the estate in accordance with her father's will. *Id*. These affairs included directing the sale of her father's home in Maryland, providing an accounting of the estate, and distributing the estate between the named parties. *Id.* The estate included the proceeds from a medical malpractice suit regarding the parties' mother, Margaret Chambers, who predeceased William. *Id.* ¶ 8-10. The settlement agreement in the malpractice suit allegedly contained a strict confidentiality clause, and Margaret Chambers had previously instructed Plaintiff not to discuss the suit with anyone except Plaintiff's father and Plaintiff's husband prior to her death. *Id.* ¶ 8-9.

The distribution of William Chambers' estate and the confidentiality agreement caused Plaintiff's relationships with Defendants to deteriorate significantly. *Id.* ¶ 11-13. Defendants became unsatisfied with the way Plaintiff was handling the estate and became suspicious that Plaintiff was improperly hiding assets from them. *Id.* Defendants allegedly asked Plaintiff to "circumvent the estate process and distribute estate funds" prematurely. *Id.* ¶ 11. Plaintiff also alleges that Defendants filed a "wholly unwarranted 'Motion for Sanctions'" in the estate case, in addition to various other court filings that falsely asserted Plaintiff had misappropriated the estate funds. *Id.* ¶ 16, 20. After failing to appease her siblings' concerns while remaining within the parameters of her position as Personal Representative, Plaintiff cut off all communication with her siblings on June 1, 2009, except as necessary to administer the estate. *Id.* ¶ 13-14.

Plaintiff alleges that this rift caused Defendants to initiate a campaign to "disseminate defamatory and false information regarding Plaintiff in an effort to tarnish her reputation, harass her and cause her emotional distress." [1] *Id.* ¶ 17. Dennis Chambers initiated the campaign on or about March 23, 2010, by allegedly sending an email to the general public mailbox for Riverdale Park, whereby he advocated for Plaintiff's dismissal from her position as Chief of the Riverdale Park Police. *Id.* ¶ 18. In support, he cited her "botched standoff during the North Carolina tractor incident (3/17/03), the 2003 eulogizing of her dog, the patronizing of her concubine with helicopter rides while presumably protecting our president . . . [and] her recent defiant contempt in the Allegany County, MD orphan's court." *Id.* On May 2, 2010, Dennis Chambers allegedly sent a mass email to many of Plaintiff's "personal and professional contacts," outlining a detailed, false account of the Plaintiff's actions in the estate matter. *Id.* ¶ 24. On or about March 1, 2011, Dennis Chambers allegedly drove from Maryland to the United States Park Police headquarters in Washington, D.C. *Id.* ¶ 39. He sat outside the headquarters with a guitar and sang a song that "called into question Plaintiff's honesty and integrity and contained veiled threats to harm Plaintiff should she not comply with Defendants' demands related to the pending estate case." *Id.* ¶ 39.

On April 22, 2010, Plaintiff received a favorable ruling in her lawsuit against the Department of the Interior in the United States District Court for the District of Columbia, prompting many blogs and news sites to post articles discussing the case. *Id.* ¶ 21. Bonnie Chambers allegedly posted remarks in the comments section of these web articles, including the blogs "Fedsmith.com," "Yubanet," "As it Stands," and the "Margie Burns Blog." *Id.* ¶ 22, 26.

---

[1] The Complaint contains multiple, detailed accusations of Defendants' conduct, but only those bearing the most significance on Defendants' motion to dismiss are outlined below.

In these comments, Bonnie Chambers accused Plaintiff of improper management of the estate and "called into question Plaintiff's honesty and character." *Id.*

On May 11, 2010, Bonnie Chambers established a blog entitled "Honest Chief?" *Id.* ¶ 27. On this website, Plaintiff alleges that Defendants use a variety of aliases to "publicly . . . assassinate Plaintiff's character." *Id.* The aliases make comments that Plaintiff lied under oath and skimmed money from their father's estate to fund her own lawsuit against the Department of the Interior. *Id.* Bonnie Chambers has also posted the blog's web address on many other sites, including some of the above-mentioned blogs. *Id.* ¶ 28. Defendants have also allegedly posted similar accusations on multiple well-known websites in the greater Maryland area, such as the Washington Post and NBC Washington websites. *Id.* ¶ 32, 33.

Plaintiff alleges that, since 2008, she has made "every reasonable effort to settle the estate of her family expeditiously," yet Defendants "continue to engage in a public attack on Plaintiff's reputation, specifically calling into question her fitness as a law enforcement officer, her integrity, and her honesty." *Id.* ¶ 43.

## PROCEDURAL HISTORY

On March 23, 2011, Plaintiff filed a five-count Complaint with this Court, alleging: Defamation; Invasion of Privacy – False Light; Intentional Infliction of Emotional Distress; Civil Conspiracy; and a Request for Preliminary and Permanent Injunctive Relief. ECF No. 1. On May 9, 2011, Defendants, proceeding *pro se*, filed a Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(3). ECF No. 7. Plaintiff filed an opposition to Defendants' Motion to Dismiss on May 26, 2011, and Defendants filed a reply in support of their motion on June 17, 2011. ECF Nos. 8-9. Defendants' Motion to Dismiss all Counts of Plaintiff's Original Complaint for Injunctive Relief is now ripe for resolution.

## ANALYSIS

Defendants argue this action should be dismissed for lack of subject-matter jurisdiction and personal jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2), and for improper venue under Rule 12(b)(3). Each argument will be addressed in turn.

### I. Subject-Matter Jurisdiction

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges whether the court has subject matter jurisdiction to adjudicate a plaintiff's claims. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "[T]he moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg, & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Defendants' sole argument challenging this Court's subject-matter jurisdiction is that "there are other venues that could serve consistent with the rights of the Defendants." Def.'s Mot. Dismiss at 2. This is an incorrect statement of the law. United States District Courts have subject-matter jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).

Defendants do not dispute that Plaintiff is a citizen of Maryland, Bonnie Chambers is a citizen of Florida, and Dennis Chambers is a citizen of Massachusetts. Def.'s Mot. Dismiss at 1-2. Plaintiff seeks $300,000 in compensatory damages, Compl. ¶¶ 50, and Defendants do not challenge the amount in controversy. Viewing the facts in the light most favorable to Plaintiff, she has sufficiently pled that this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 174 F. Supp. 2d 388, 391 (D. Md.

2001). Accordingly, Defendants' motion to dismiss for lack of subject-matter jurisdiction will be denied.

## II. Personal Jurisdiction

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) challenges whether the court has personal jurisdiction over a defendant. "When . . . a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, a plaintiff need only make a prima facie showing of a personal jurisdiction." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citations omitted). Under this type of motion, a court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).

A federal court may exercise personal jurisdiction over a nonresident defendant when two conditions are satisfied: (1) the exercise of jurisdiction must be authorized by the forum state's long-arm statute, and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. *Carefirst*, 334 F.3d at 396. Maryland has construed its long-arm statute to authorize the exercise of personal jurisdiction to the full extent allowable under the due process requirements of the Fourteenth Amendment. *Id.* (citations omitted). Nevertheless, the Court must fit its exercise of personal jurisdiction under one of the enumerated provisions of Maryland's long-arm statute. *See Dring v. Sullivan*, 423 F. Supp. 2d 540, 547 (D. Md. 2006) (clarifying that Maryland Court of Appeals still requires an analysis under the Maryland long-arm statute in addition to a due process analysis).

Maryland's long-arm statute enumerates six circumstances whereby a court may exercise personal jurisdiction over a defendant. It states, in pertinent part, that a court may exercise personal jurisdiction over a person who, directly or by an agent:

> (3) [c]auses tortious injury in the State by an act or omission in the State; [or] (4) [c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State.

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(3) to (4). Plaintiff asserts that Defendants' conduct satisfies both of these provisions. Pl.'s Opp'n Def.'s Mot. Dismiss at 11. The Court agrees.

Section 6-103(b)(3) requires that both the tortious injury and the tortious act occur in Maryland. *Dring v. Sullivan*, 423 F. Supp. 2d 540, 547 (D. Md. 2006) (citations omitted). At the very least, Defendants' allegedly false filings with the Orphans Court for Allegany County, Maryland constitute an act that occurred in Maryland. These filings are publicly available. It follows that Plaintiff's asserted injury—defamation—also occurred in her home state of Maryland. This is sufficient to make a prima facie showing under § 6-103(b)(3).

Plaintiff has also made a prima facie showing that Defendants' alleged conduct outside of Maryland fits within the requirements of § 6-103(b)(4). In addition to the Orphans Court filings, Defendants allegedly made a concerted effort to further publicize their false beliefs. The allegations of Defendants' Internet activity are numerous and specific. Defendants created blogs, posted comments on websites, and sent emails to Maryland residents and towns in an effort to defame Plaintiff. Under the alleged facts, this is sufficient to warrant a prima facie finding of a "persistent course of conduct" under § 6-103(b)(4).

Exercising personal jurisdiction in this action also comports with the due process requirements of the Fourteenth Amendment. For a court's exercise of personal jurisdiction to

7

comport with due process requirements, the nonresident defendant must have sufficient "minimum contacts" with the forum, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 236 U.S. 310, 316 (1945). In evaluating whether sufficient minimum contacts exist, courts should consider:

> (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.* (citations omitted) (internal quotations omitted).

Under the facts alleged, it is evident that Defendants have purposefully availed themselves of the privilege of conducting activities in Maryland and that Plaintiff's alleged injuries arise out of Defendants' Maryland-directed activities. While Defendants are beneficiaries to their father's estate, they were not the ones charged with distributing the proceeds. Nevertheless, they chose to intervene in the estate proceedings in the Orphans Court for Allegany County, Maryland. They allegedly filed false, misleading, and defamatory statements against their sister, hoping Plaintiff would circumvent the legal process and allocate funds from the estate to them.

Moreover, Defendants have purposefully availed themselves to Maryland through their Internet activities. The Fourth Circuit has adopted a three-prong test when evaluating whether a defendant's Internet use gives the forum personal jurisdiction over that defendant. In *ALS Scan v. Digital Service Consultants*, 293 F.3d 707 (4th Cir. 2002), the Fourth Circuit held that merely "placing information on the Internet is not sufficient by itself to subject [a] person to personal

jurisdiction in each State in which the information is accessed." *Id.* at 712. But the court explicitly stated:

> a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's course.

*Id.*

The Fourth Circuit's Internet-use standard is similar to the one articulated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, the Court held that a Florida citizen could be forced to answer a libel suit in California, even though its only contact with California resulted from writing and publishing an allegedly false article in Florida. *Id.* at 789. The Court found that the defendants' "intentional, and allegedly tortious, actions were expressly aimed at California" because the article focused on the state of California and the plaintiff's California activities. *Id.* The Court further held that "under the circumstances, [defendants] must reasonably anticipate being haled into court there to answer for the truth of the statements made in their article." *Id.* at 790 (internal quotations and citations omitted).

Under the facts alleged, Defendants intentionally directed electronic activity into Maryland with the purpose of causing injury to a Maryland resident. *See Silver v. Brown*, 382 F. App'x 723, 729-730 (10th Cir. 2010) (holding that defendant's blog, set up in direct response to a business deal and accusing plaintiff of wrongdoing, constitutes an intentional act expressly aimed at the forum state with knowledge that the injury would be felt in that forum). They posted on websites, sent emails to Maryland residents, and created blogs that all contain information regarding a Maryland estate proceeding. Dennis Chambers intentionally sought out Maryland residents when making the alleged defamatory statements about Plaintiff in an effort to

harm her reputation.  Bonnie Chambers created "HonestChief?" to publicize the Orphans Court case and her disagreement with Plaintiff's handling of it, as evidenced by the blog's content and by the consistent posting of its URL on websites with notably large audiences.  These activities go beyond merely "placing information on the Internet." *ALS Scan*, 293 F.3d at 712.  The manifested intent of Defendants' alleged conduct is to reach Maryland citizens—including Plaintiff—creating a cognizable cause of action in Maryland.  *See ALS Scan*, 293 F.3d at 712. Under the alleged facts, Defendants must "reasonably anticipate being haled into court [here] to answer for the truth of [their] statements."  *See Calder*, 465 U.S. at 790.  Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction will be denied.

**III.  Venue**

Rule 12(b)(3) provides that a claim may be dismissed on the grounds of improper venue. When a civil action's jurisdiction is founded on diversity of citizenship, *see* Part I, *supra*, venue is proper in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ."  28 U.S.C. § 1391(a)(2).  Defendants argue that "[n]one of the alleged events" in Plaintiff's lawsuit took place within this Court's jurisdiction.  Def.'s Mot. Dismiss at 3.  Defendants also assert that Florida or Massachusetts "could easily satisfy as proper venue." *Id.*

As outlined above, William Chambers' estate proceeding is based in Allegany County, Maryland, and Defendants have directed their Internet activity at Maryland in an attempt to injure Plaintiff.  Plaintiff's injury is likely to be felt in Maryland.  Therefore, a substantial part of the events that give rise to Plaintiff's claims occurred within this Court's jurisdiction. Defendants' argument that either Florida or Massachusetts would also serve as proper venue is insufficient, as a plaintiff is given great deference when she chooses her home forum.  *See Piper*

*Aircraft Co. v. Reno*, 454 U.S. 235, 266 (1981).  Accordingly, Defendants' motion to dismiss for improper venue will be denied.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss All Counts of Plaintiff's Original Complaint for Injunctive Relief (ECF No. 7) will be denied.  A separate order follows.


Date:  August 8, 2011                             /s/
                                                           Roger W. Titus
                                                           United States District Judge